IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ACES TOWING AND RECOVERY, LLC,
a sole proprietorship,

    Plaintiff,

vs.                                                                          No. 6:10-cv-01171 JAP/RHS

CITY OF ESPAÑOLA, ESPAÑOLA POLICE
DEPARTMENT, JOE MARTINEZ, individually
and in his official capacity, CECILIA LUJAN
individually an in her official capacity, GREG
ORTEGA, individually and in his official capacity,
COREY LEWIS, individually and in his official
capacity, CITY OF ESPAÑOLA EMPLOYEES and
SUPERVISORS JOHN/JANE DOES 1 through 5,
individually and in their official capacities.

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Defendants the City of Española , the Española Police Department, Joe Martinez, Cecilia Lujan, Greg Ortega, Corey Lewis, City of Española Supervisors, and Supervisors John/Jane Does 1 through 5 (collectively "Espanola")[1] request the Court to enter summary judgment in their favor on the ground that Plaintiff Aces Towing and Recovery, LLC (Aces) has failed to show that Aces possessed, or that Española violated, Aces' alleged constitutional rights to due process and equal protection.[2] Because the Court concludes that Aces has failed to demonstrate

---

[1] The Court will refer to all of the Defendants as "Española" except where necessary to single out the individual defendants—Joe Martinez, Cecilia Lujan, Greg Ortega, Corey Lewis, City of Española Supervisors, and Supervisors John/Jane Does 1 through 5—to whom the Court will refer as the "Individual Defendants."

[2] Espanola filed a Motion for Summary Judgment (Doc. No. 12) on February 18, 2011. Aces filed its Response to Defendant's Motion for Summary Judgment (Doc. No. 18) on March 21, 2011 and Espanola filed its Reply (Doc. No. 21) on April 14, 2011.

that Española's towing regulations created a constitutionally protected property interest, and because the Court also concludes that Aces has failed to demonstrate that Española violated Aces' equal protection rights, the Court will grant Española's Motion for Summary Judgment and will enter summary judgment in Española's favor.

## BACKGROUND

According to Aces' Complaint For Damages and Injunctive Relief (Complaint) (Doc. No. 1), Aces is a towing company that provided towing services in the Española, New Mexico area. At some point before April 2010[3], Aces applied, and was accepted, to be placed on the City of Española's towing rotation list. Apparently, the towing rotation list is used to determine which towing company will be called to tow vehicles for the Española police department. On April 8, 2010, Chief Joe Martinez, the Española Police Department's Chief of Police, wrote a letter to Aces informing Aces that it would no longer be allowed on the towing rotation list because Aces was not located within the City of Española and did not store towed vehicles within city limits. According to Aces, Chief Martinez's decision to remove Aces from the towing rotation list violated Regulation 50.1 of the Española Police Department's regulations.

In August 2010, Aces was notified that it had been placed back on the towing rotation list. However, on October 22, 2010, Aces was informed via telephone that it had been taken back off of the towing rotation list due to an incident involving a motorcycle[4] that Aces had

---

[3] In its Complaint Aces does not identify the date that it first was included on the towing rotation list. It appears from Aces' Response that Aces was first placed on the list sometime in 1999.

[4] Aces does not provide any detail about the incident involving Aces' towing of the motorcycle. Thus, the Court will refer to this as the "motorcycle incident" throughout this opinion.

towed. According to Aces, Española advised Aces that Aces would be placed back on the towing rotation list if Aces resolved the motorcycle incident.

As a result of its being removed from the towing rotation list, Aces filed its five count Complaint against Española. In Count I, Aces brings a claim against the Individual Defendants under 42 U.S.C. §1983 for alleged violations of Aces constitutional rights. In Count II, Aces brings a claim under Section 1983 against the City of Española and the Española Police Department for "develop[ing] policies or customs exhibiting a deliberate indifference to the constitutional rights of persons in the City of Española." Complaint at 7. Aces contends that these policies and customs permitted the individual defendants to violate Aces constitutional rights. In Count III, Aces asserts a claim under the United States and the New Mexico constitutions for a violation of its due process rights. Aces contends that Española "refused to afford Aces due process of law [by] retroactively remov[ing] Aces from the [towing rotation list] without notice, a hearing, or opportunity to be heard." Complaint at 8. In addition, Aces contends that Española "changed the regulations concerning towing rotation and retroactively applied the change in order to remove Aces from" the towing rotation list. *Id.* Aces maintains that this action violated its equal protection rights. In Count IV, Aces asserts a claim for punitive damages and in Count V Aces seeks injunctive relief against Española.[5]

In its Motion for Summary Judgment, Española contends that summary judgment should

---

[5]Aces "requests that the Court grant injunctive relief against the Defendants, all of them, thereby preventing Aces from being on the Española Police Department's towing rotation." Complaint at 9, ¶41. This requested relief—an injunction that *prevents* Aces from being placed on the towing rotation list—is inconsistent with Aces assertions that it was wrongfully removed from the towing rotation list. Thus, the Court construes this to be a poorly articulated request that Aces be placed back on the towing rotation list and that Española be enjoined from *removing* Aces from the towing rotation list in the future.

be granted in its favor because Regulation 50.1, the regulation related to towing services that Aces cites in its complaint, does not create a constitutional right—an essential element of a due process claim—to remain on the towing rotation list. In addition, Española argues that its act of removing Aces from the towing rotation list did not violate Aces' equal protection rights.

In its Response, Aces argues that summary judgement is not appropriate at this time because discovery has not yet been completed and material issues of disputed facts remain. Specifically, Aces contends that, contrary to Española's assertion that Regulation 50.1 became effective on September 1, 2009, Regulation 50.1 actually did not go into effect until December 2009.  In addition, Aces argues that its placement on the towing rotation list is  not governed by Regulation 50.1 but instead is governed by a 2003 Towing and Wrecker Service Policy (2003 Policy) that was apparently sent to Aces sometime after Aces was first was placed on the towing rotation list.  Aces asserts that the 2003 Policy created a constitutionally protected property interest and that Española did not have a rational basis to remove Aces from the towing rotation list.

## DISCUSSION

**A. Standard of Review**

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party on the issue" and "[a]n issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Thomas v. Metropolitan Life Ins. Co.*, No. 09-6207, 631 F.3d 1153, 1160(10th Cir. 2011). In reviewing a motion for summary judgment, the Court views "the evidence and its reasonable

inferences in the light most favorable to the non-movant." *Id.* If, after viewing the evidence in the light most favorable to the non-movant, the Court concludes that the movant is entitled to a judgment as a matter of law, then summary judgment must be entered in the movant's favor. *See id.*

**B. Aces Failed to Identify any Disputed Issues of Material Fact**

Aces first argues that summary judgment is inappropriate because there are disputed issues of fact surrounding Española's towing rotation policy. First, Aces asserts that there is an inconsistency regarding the effective date of Regulation 50.1. Second, Aces argues that the 2003 Policy, not Regulation 50.1, governed Aces' relationship with Española.

According to the text of Regulation 50.1, the effective date of the regulation was September 9, 2009. In addition, Jessica Martinez, the Interim City Clerk for the City of Española, submitted an affidavit attesting that the effective date of the regulation was September 1, 2009. Despite the evidence that the effective date of Regulation 50.1 was September 1, 2009, Aces' attorney notes in an affidavit attached to Aces' response that there is a notation at the end of Regulation 50.1 that states: "drafted 12/09." In addition, the cover page for the Española Police Department Directives (Directives), the document that contains Regulation 50.1, indicates that the Directives were "reviewed and approved" on "December 1st, 2009." According to Aces' attorney, the fact that the notation at the end of Regulation 50.1 states that it was "drafted 12/09" creates a disputed issue of material fact regarding what policy was in effect at the time that Aces was removed from the towing rotation list.

Española first removed Aces from the towing rotation list on April 8, 2010. Aces was then placed back on the towing rotation list, but then removed again on October 22, 2010. Because Aces was only removed from the towing rotation list in 2010, any dispute regarding

whether Regulation 50.1 went into effect in September or in December 2009 is irrelevant as there is no dispute that Regulation 50.1 was in effect in April or October 2010. The first page of Regulation 50.1 indicates that the regulation was effective beginning on September 1, 2009. Further, the Interim City Clerk's affidavit states that Regulation 50.l went into effect on September 1, 2009. Thus, to the extent that there is any dispute about the effective date of Regulation 50.1, that dispute is not material to this case as the regulation was clearly in effect at the time that Aces was removed from the towing rotation list.

In addition, the Court disagrees that the notation "drafted 12/09" indicates that Regulation 50.1 went into effect on a later date than Española contends. Because, on its face, Regulation 50.1 provides an effective date of September 1, 2009, the "drafted" notation could simply indicate the date that the regulation was published, the date that the regulation was compiled into the Directives, or any number of other actions that have nothing to do with the date that the regulation went into effect. In the absence of any evidence that the effective date on the face of Regulation 50.1 is incorrect, the Court questions whether Aces has sufficiently raised a genuine dispute regarding the effective date of Regulation 50.1. *See Wethrill v. Bank IV Kansas, N.A.*, 145 F.3d 1187 (10th Cir. 1998) (noting that the "party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts sufficient to raise a genuine issue for trial as to the elements of the non-moving party's case" and that the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts"). Because Aces has not provided any admissible evidence that the effective date, September 1, 2009, of Regulation 50.1 is incorrect, the Court concludes that Aces has failed to demonstrate that there is a genuine dispute regarding the effective date of Regulation 50.1.

Notwithstanding the fact that Regulation 50.1 was in effect at all times relevant to Española's decision to remove Aces from the towing rotation list, Aces contends that there is a disputed issue of material fact regarding whether Regulation 50.1 or the 2003 Policy governed Aces' relationship with Española. Both Regulation 50.1 and the 2003 Policy provide that the Chief of Police has the authority to remove a towing company from the towing rotation list. Regulation 50.1 states that "[t]he Chief or Deputy Chief has the authority to remove a towing company from the department wrecker rotation log" and the 2003 Policy declares that "[t]he Chief of Police has the only authority to remove a towing company from the wrecker rotation log." Thus, the only difference between Regulation 50.1 and the 2003 Policy with respect to the Chief's authority to remove a towing company from the rotation list is that Regulation 50.1 also grants this authority to the Deputy Chief of Police. Because both Regulation 50.1 and the 2003 Policy have practically identical provisions relating to the removal of towing companies, the Court concludes that whether Regulation 50.1 or the 2003 Policy was in effect at the time that Aces was removed from Española's towing rotation list is irrelevant. Thus, any dispute about which was in effect at the time that Aces was removed from the towing rotation list is not material as it is not "essential to the proper disposition of [Aces'] claim." *Thomas*, 631 F.3d at 1160.

## C. Española is Entitled to a Judgment as a Matter of Law

### 1. Due Process

Española contends that summary judgment in its favor on Aces' due process claim is warranted because Aces cannot establish that being on the towing rotation list created a vested property interest—a necessary element of Aces' due process claim. The Court must apply a two-step inquiry to determine whether Aces has been deprived of its Fourteenth Amendment right to

procedural due process. *Veile v. Martinson*, 258 F.3d 1180, 1185 (10th Cir. 2001). First, the Court must determine whether Aces "possess[ed] a protected interest such that the due process protections were applicable." *Id.* If Aces possessed a protected interest, then the Court must next determine whether Aces was "afforded an appropriate level of process." *Id.* However, if Aces fails to establish the "threshold legal issue" of the existence of a "constitutionally protected property interest in the rotation policy," then the Court does not need to inquire any further. *Id.* "In order for someone to have a property interest in a benefit, he must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Abercrombie v. City of Catoosa, Oklahoma*, 896 F.2d 1228, 1231 (10th Cir. 1990) (quotation marks omitted). "Property interests arise from sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Id.* "In other words, property interests attain constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Veile*, 258 F.3d at 1185 (quotation and alteration marks omitted).

   In an attempt to prove that the 2003 Policy and Regulation 50.1 are recognized and protected under state law, Aces cites to a number of provisions of New Mexico's Motor Transportation Act. The first provision is a general policy statement that provides, among other things, that "it is the policy of [the] state to . . . provid[e] for economic regulation of . . . towing services performing nonconsensual tows." NMSA 1978, §65-2A-2. The second provision is a definitional statute that defines a nonconsensual tow as "the compensated transportation of a motor vehicle by a towing service, if such transportation is performed at the request of a law enforcement officer." NMSA 1978, §65-2A-3. While both of these statutory provisions mention nonconsensual towing services, neither statute has any relationship to towing rotation lists or any

other subject matter that could be deemed to create a property interest in remaining on a towing rotation list. The third provision that Aces cites is a limitation on the Motor Carrier Act; it clarifies that "nothing contained in the Motor Carrier Act shall be construed . . . to repeal a power of a municipality . . . to adopt and enforce reasonable police regulations and ordinances in the interest of public safety, morals and convenience." NMSA 1978, §65-2A-39. While Aces correctly notes that Section 65-2A-39 *recognizes* a municipality's power to adopt and enforce police regulations, Aces does not explain how Section 65-2A-39 can be construed in any way to create a property interest in remaining on a towing rotation list. That a municipality's authority to adopt police regulations is *recognized* does not mean that the authority has been granted by state law in such a way that the police regulations can be deemed to be protected and recognized by the state. This distinction is critical because unless a police regulation is recognized and protected by state law, those regulations cannot create a constitutionally protected property interest.

    Under New Mexico law, municipalities have the power to "adopt ordinances or resolutions not inconsistent with the laws of New Mexico." NMSA 1978 §3-17-1 (1993). While Aces does not argue this point, or even cite to Section 3-17-1, an ordinance or resolution adopted by a municipality in accordance with the powers granted to the municipality by Section 3-17-1 would likely be deemed to be protected by state law such that it could create a constitutionally protected property interest. *See Veile*, 258 F.3d at 1180 (10th Cir. 2001) (noting, in concluding that a funeral home rotation list was not a constitutionally protected property interest, that the plaintiffs did "not argue that the rotation policy constituted county legislation"). Thus, if Regulation 50.1 or the 2003 Policy are ordinances or resolutions that have been adopted by the City of Espanola, then they could be deemed to be "recognized and protected by state law" such

9

that they could create a constitutionally protected property interest.

Española argues that the 2003 Policy is *not* protected by state law because it is not an ordinance or resolution of the municipality. Española notes that the 2003 Policy is an internal police department policy that is drafted on the Española Police Department's letterhead. The 2003 Policy is unsigned, but has a signature line for the Chief of Police. There is no indication that the 2003 Policy was enacted as an official city ordinance by the city council nor is there any indication that the 2003 Policy is anything other than an internal police department policy. Because the 2003 Policy is not a municipal ordinance or regulation, the 2003 Policy cannot create a constitutionally protected property interest. Similarly, Regulation 50.1 is a part of the Española Police Department's Directives. While Regulation 50.1 was adopted by Española's Public Safety Committee, Regulation 50.1 is a police department policy—not a municipal ordinance or regulation. And, because Aces has failed to identify any law, case,[6] or regulation that elevates a police department policy to the status of a regulation with the force of state law, the Court concludes that the towing rotation policies do not give rise to a constitutionally protected property interest. *See Veile*, 258 F.3d at 1186 (concluding that funeral home rotation list did not create a constitutionally protected property interest because no "statute, regulation, administrative rule, or case law" was identified that could have been "construed to establish [the funeral home's] entitlement to receive the coroner cases at issue"); and *Morley's Auto Body, Inc.*

---

[6]Aces cited three New Mexico cases in support of its assertion that the towing policies have the force of state law. All three of those cases relate solely to the authority the New Mexico legislature has given to *state* administrative agencies and the fact that state administrative agency rules and regulations have the force of law. *See e.g. City of Albuquerque v. New Mexico Public Regulation Com'n*, 2003-NMSC-028, ¶16, 134 N.M. 472, 79 P.3d 297 (noting that "an act of an administrative agency which is authorized by the Legislature has the force and effect of law") (alteration marks omitted). Because the Española Police Department is not a state administrative agency, the cases Aces cites have no applicability to this case.

*v. Hunter*, 70 F.3d 1209, 1216-17 (11th Cir. 1995) (noting that "[t]he existence of a property right in a [towing rotation case] turns on whether the alleged claim of entitlement is supported or created by state law such as a state statute or regulatory scheme or decisional law"). Any expectations Aces had in receiving a benefit from the policy arise solely from the towing policies themselves, not from any New Mexico law. Because Aces has failed to establish that it has a constitutionally protected property interest in remaining on the towing rotation list, the Court concludes that summary judgment should be granted in favor of Española on Aces' due process claims.

In addition, even if the Court were to assume that either the 2003 Policy or Regulation 50.1 are the type of policies that could create a constitutionally recognized property interest, the Court would nevertheless grant summary judgment in Española's favor due to the fact that both policies give the Chief of Police unfettered discretion to remove a towing company from the towing rotation list for any or no reason. As the Court has already noted, both the 2003 Policy and Regulation 50.1 provide that the Chief of Police "has the only authority to remove a towing company from the department wrecker rotation log." 2003 Policy. There is no limitation placed on this authority, nor is there any requirement that the Chief articulate a reason for removing a towing company from the towing rotation list or that the Chief make any specific findings that a towing company is not performing satisfactorily prior to removing a towing company from the list. In fact, both policies grant the Chief of Police absolute discretion to remove a towing company for any or no reason.

The Tenth Circuit does not appear to have addressed whether a constitutionally protected property interest can exist where, as here, a public official is given complete discretion to take away an individual's access to that interest. The Tenth Circuit has, however, held that a property

11

interest in *obtaining* a benefit does not exist if "the governing body retains discretion and the outcome of the proceeding is not determined by the particular procedure at issue." *Nichols v. Board of County Com'rs of County of La Plata, Colorado*, 506 F.3d 962 (10th Cir. 2007) (addressing whether a constitutionally protected property interest exists in a municipal land use case). It is only where "discretion is limited by the procedures in question" that a property interest exists. *Id.* Given that the Tenth Circuit has concluded that a property interest cannot exist where a public official has discretion to grant a benefit to an individual, it follows that a property interest also cannot exist where a public official has discretion to take a benefit away from an individual.

This conclusion is supported by the fact that a property interest exists only when an individual has "a legitimate claim of entitlement" to the benefit. *Abercrombie*, 896 F.2d at 1231. When a public official has complete discretion to take away a benefit, an individual cannot have a legitimate claim of entitlement to that benefit as it can be taken away at any time for any or no reason. *See Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005) (noting that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion"). As the United States Supreme Court explained in addressing whether a prison regulation created a constitutionally protected liberty interest, "regulations [that] place no substantive limitations on official discretion . . . create no liberty interest entitled to protection under the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238 (1983). Because the Chief of Police has the sole authority to add or remove a towing company from the towing rotation list, and because neither the 2003 Policy nor Regulation 50.1 placed any limitations on the Chief's ability to remove a towing company from the list, Aces did not have a legitimate claim of entitlement to remaining on the list. Thus, the Court concludes that Aces did not have a

constitutionally protected property interest in remaining on the towing rotation list. For this reason, the Court would grant summary judgment on Aces due process claim even if either the 2003 Policy or Regulation 50.1 were the type of regulations that could create a property interest.

Aces contends that its case is similar to *Gregg v. Lawson*, 732 F.Supp. 849 (E.D. Tenn. 1989), a United States District Court case from the Eastern District of Tennessee in which the district court concluded that a towing company had a protected property interest in remaining on a towing rotation list. Aces notes that in *Gregg*, the district court concluded that the towing company had been placed on the list, that the towing company's services had been utilized and the company had received economic benefits, that the towing company had complied with all the requirements of the written regulations, and that the towing company had not been accused of any misconduct. *Id.* Aces argues that it, like the towing company in *Gregg*, was initially placed on the towing rotation list, had its services utilized by Española, received an economic benefit from being on the list, complied with all the requirements set forth in the policies, expended a sum of money to maintain its compliance, and was not accused of any misconduct. Response at 10. Aces fails to recognize, however, that the towing rotation policy in *Gregg* had "several references to and procedures for removal or suspension from the list to compel compliance with the regulations." 732 F.Supp. at 853. Here, in contrast, there are no procedures for removal or suspension from the list other than the absolute discretion vested in the Chief of Police. Thus, *Gregg* is not a factually similar case and has no bearing on the Court's conclusion that Aces has failed to demonstrate that it has a protected property interest in remaining on Española's towing rotation list.

**2. Equal Protection**

In addition to asserting a due process claim, Aces also brought a claim against Española

under the Equal Protection clauses of the United States and New Mexico constitutions. Aces contends that there was no rational basis for Española's decision to exclude Aces from the towing rotation list.  It is not clear from Aces' Complaint if Aces' equal protection claim stems from Española's decision to remove Aces from the towing rotation list because Aces was not located within city limits or if Aces' equal protection claim is based on Española's subsequent decision to remove Aces due to "an incident involving Aces' towing of a motorcycle." Complaint at 5. In its Response, however, Aces clarifies that its equal protection claim is based solely on Española's act of removing Aces from the towing rotation list due to the motorcycle incident.

In asserting its equal protection claim, Aces does not allege that it was a member of a suspect class.  Thus, Aces' equal protection claim is a "class of one" claim—a claim that "presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605, 128 S.Ct. 2146, 2155 (2008); *Jennings v. Stillwater*, 383 F.3d 1199, 1210 (10th Cir. 2004) (noting that plaintiffs in class-of-one cases "need not allege that they were part of a suspect class to state an equal protection claim"). In its Motion for Summary Judgment, Española contends that class-of-one claims are inappropriate where, as here, a government official is given complete discretion to take the action about which a plaintiff complains.

There appears to be some support for Española's position.  In *Kelley v. City of Albuquerque*, 542 F.3d 802, 821 (10th Cir. 2008), the Tenth Circuit held that a "class-of-one theory is not legally cognizable where . . . a public employee claims that she has been treated differently than other employees."  In so holding, the Tenth Circuit relied on a United States Supreme Court case where the Supreme Court noted that it had "never found the Equal

14

Protection Clause implicated . . . where . . . government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Engquist,* 553 U.S. at 605. The Supreme Court explained that "[t]o treat employees differently is not to classify them in a way that raises equal protection concerns" but is instead a way "to exercise the broad discretion that typically characterizes the employer-employee relationship." The Supreme Court's decision to exclude public employees from class-of-one equal protection claims was founded in the at-will nature of government employment.  The Supreme Court reasoned a claim that a government employee was treated "differently from others for a bad reason, or for no reason at all . . . is contrary to the concept of at-will employment."

The Tenth Circuit has never directly addressed whether *Engquist*'s bar of class-of-one claims extends to other discretionary government functions.  In an unpublished opinion, the Tenth Circuit hinted that it might extend *Engquist's* bar by noting that while it has not ever "considered *Engquist* in the public contractor context, at least one court," the Eleventh Circuit Court of Appeals, "has applied it to reject such a claim." *Glover v. Mabrey*, 384 Fed.Appx. 763, 778 (10th Cir. 2010) (unpublished). The Tenth Circuit declined to address the issue, however, because the plaintiff's class-of-one claim failed for an independent reason.  *See id.* Despite the lack of any Tenth Circuit precedent on this issue, the Court notes that the same concerns that motivated the Supreme Court to reject class-of-one equal protection claims in the public employment context appear to be implicated in this case.  Because both Regulation 50.1 and the 2003 Policy gave the Chief of Police absolute discretion to remove a company from the towing rotation list, the situation in the case is analogous to an at-will employment relationship.  Thus, permitting a class-of-one claim for Española's removal of Aces from the towing rotation appears to be contrary to the policies articulated in *Engquist.*

Resolution of this question is unnecessary, however, as there is a more fundamental problem with Aces' equal protection claim—Aces has failed to "make a threshold showing that [it was] treated differently from others who were similarly situated to [it]." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).  That is, Aces does not contend that other towing companies engaged in activities similar to the motorcycle incident and were not removed from the towing rotation list.

As the United States Supreme Court has explained, a class-of-one claim presupposes that like individuals should be treated alike.  *Id.*  Thus, a plaintiff asserting a class-of-one equal protection claim must "make an adequate showing that similarly situated persons were treated differently." *Jennings*, 383 F.3d at 1213.  And while proving that similarly situated persons were treated differently is an important element of all equal protection claims,"[t]his element is especially important in class-of-one cases." *Id.* (noting that "[i]t is this comparative element that distinguishes the Equal Protection Clause from the Due Process Clause").  In fact, "the multiplicity of relevant (nondiscriminatory) variables" that might justify an allegedly discriminatory decision in a class-of-one case "require[ the] plaintiff to provide compelling evidence of other similarly situated persons who were in fact treated differently." *Bruner v. Baker*, 506 F.3d 1021, 1029 (10th Cir. 2007) (quotation marks omitted).  Aces, however, has not only failed to provide compelling evidence that other similarly situated towing companies were treated differently, but Aces has also failed to even *allege* that it was treated differently than other similarly situated towing companies.  Because Aces alleges that Española treated Aces unfairly by removing it from the towing rotation list due to the incident involving a motorcycle, Aces must establish that Española treated other towing companies that engaged in the same or similar conduct differently.  Because Aces has failed to do so, the Court concludes that summary

16

judgment should be granted in Española's favor on Aces equal protection claim. *See Bruner*, 506 F.3d at 1029 (noting that because the plaintiff "failed to point to any similarly situated individuals, let alone similarly situated individuals treated differently, his class-of-one equal protection claim must fail"); *Glover*, 384 Fed.Appx. at 778 (dismissing a public contractor's class-of-one claim because the contractor "failed to alleged, as it must, the identity or characteristics of other similarly situated contractors who were treated differently").

### 3. Qualified Immunity

In addition to arguing that it is entitled to summary judgment on Aces' due process and equal protection claims, Española also argues that the individual defendants are entitled to summary judgment on the basis of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions are not liable for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Deutsch v. Jordan*, 618 F.3d 1093, 1098 (10th Cir. 2010) (quotation marks omitted). In order to overcome a motion for summary judgment on the ground of qualified immunity, a plaintiff "must clear two hurdles," the first of which is that the plaintiff must "show a violation of federal constitutional or statutory rights." *Id.* at 1099. If a plaintiff shows a violation of federal rights, the plaintiff must then show that a reasonable public official would have known that his or her conduct was illegal. *Id.*

Aces has alleged that the individual defendants violated Aces rights to equal protection and due process. As the Court has discussed in some detail above, Aces has failed to demonstrate that its constitutional rights to due process or equal protection have been violated. Because Aces has failed to show a violation of its federal constitutional rights, the Court concludes that the individual defendants are entitled to summary judgment on the basis of

qualified immunity.

**4. Remaining Counts**

Having concluded that summary judgment should be entered in Española's favor on Aces' claims that Española violated Aces' due process and equal protection rights, the Court notes that there are no triable causes of action remaining in Aces Complaint. Counts I and II of Aces' Complaint are Section 1983 claims based on the alleged due process and equal protection violations. As the Court has already explained, summary judgment will be entered on Counts I and II because Aces failed to demonstrate that its constitutional rights were violated. In Count III, Aces asserted its claim for Española's alleged violation of Aces due process and equal protection rights. As the Court discussed in some detail, summary judgment should be entered in Española's favor on Count III. In Counts IV and V, Aces made a claim for punitive damages and a claim for injunctive relief. Both of these claims, however, are dependent on Aces claims that Española violated Aces due process and equal protection rights. And, having concluded that summary judgment should be entered in the Española's favor on the claims that form the basis of Aces' request for punitive damages and injunctive relief, summary judgment must also be granted on Counts IV and V. Thus, summary judgment will be entered in Española's favor on all five counts in Aces' Complaint and this case will be dismissed.

**IT IS ORDERED THAT** Defendants the City of Española, the Española Police Department, Joe Martinez, Cecilia Lujan, Greg Ortega, Corey Lewis, City of Española Supervisors, and Supervisors John/Jane Does 1 through 5 Motion for Summary Judgment (Doc. No. 12) is GRANTED, summary judgment will be entered in the Defendants' favor, and this case will be dismissed.

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE